ACCEPTED
03-15-00325-CV
7686768
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/4/2015 3:53:12 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00325-CV**

_____

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/4/2015 3:53:12 PM
JEFFREY D. KYLE
Clerk

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant,*

v.

JESSICA LUKEFAHR,

*Appellee.*

_____

On Appeal from
the 345th Judicial District Court of Travis County, Texas
Trial Court Case No. D-1-GN-14-002158
The Honorable Stephen Yelenosky, Presiding

_____

**APPELLEE'S SUR-REPLY**

_____

MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
T: 512.458.5800
F: 512.458.5850
moconnell458@gmail.com

*Attorney for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT .........................................................................................1

    A.   The Applicable Standard of Review in this Case is not in Dispute ...............................................................................................1

    B.   HHSC's Interpretation of TMHP's Denial Notice does not Support Reversal of the District Court's Decision ......................................4

    C.   The Administrative Record Contains No Probative Evidence Supporting HHSC's Assertion that a Separate Stander will Meet Jessica Lukefahr's Medical Need to Stand...........................................6

    D.   HHSC Failed to Follow its Own Procedures and those Required by Federal Medicaid Policy ...................................................................13

CONCLUSION AND PRAYER ...............................................................14

CERTIFICATE OF COMPLIANCE.................................................................15

CERTIFICATE OF SERVICE...................................................................16

# TABLE OF AUTHORITIES

## CASES

*City of El Paso v.Public Util. Comm'n of Tex.*,
   883 S.W. 2d 179 (Tex. 1994) ...............................................................................4

*City of Waco v. Texas Comm'n on Envtl. Quality*,
   46 S.W.3d 781 (Tex. App.—Austin 2011, pet. denied) ..................................3, 4

*Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl.*
   *Quality,* 393 S.W.3d 417 (Tex. App. 2012) .......................................................3

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)..............................................................................................4

*Moore v. Reese*,
   637 F.3d 1220 (11th Cir. 2011) .......................................................................8, 9


## REGULATIONS

1 TEX. ADMIN. CODE § 354.1039(a)(4)(D) ................................................................5

1 TEX. ADMIN. CODE § 357.11(a)(1)...........................................................................4

1 TEX. ADMIN. CODE § 357.703(b)(3)........................................................................14

42 C.F.R. § 431.210(b) ...............................................................................................4

42 C.F.R. § 431.210(c)................................................................................................4


## STATUTES

TEX. GOV'T CODE § 2001.174...................................................................................2

TEX. GOV'T CODE § 2001.174(2)..............................................................................1

## OTHER AUTHORITIES

Texas Medicaid Provider's Procedure Manual §2.2.15.12.4....................................10

Texas Medicaid Provider's Procedure Manual §2.2.15.12.5....................................10

No. 03-15-00325-CV
_____

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS
_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant,*

v.

JESSICA LUKEFAHR,
*Appellee.*
_____

On Appeal from
the 345th Judicial District Court of Travis County, Texas
Trial Court Case No. D-1-GN-14-002158
The Honorable Stephen Yelenosky, Presiding
_____

**APPELLEE'S SUR-REPLY**
_____

TO THE HONORABLE COURT OF APPEAL:

Appellee, Jessica Lukefahr, respectfully files this Sur-Reply to address several

factual and legal errors contained in Appellant's Reply Brief.

**ARGUMENT**

**A.    The Applicable Standard of Review in this Case is not in Dispute.**

There is no dispute concerning the applicable standard of review in this case.

TEX. GOV'T CODE § 2001.174(2) states that a court "shall reverse or remand the case

for further proceedings if substantial rights of the appellant have been prejudiced

1

because the administrative findings, inferences, conclusions, or decisions are…(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious…" The district court correctly applied this standard of review when it reversed HHSC's administrative decision in this case.[1] CR 226.

Jessica Lukefahr has not attempted "to shift the standard of review" as HHSC contends. Appellant's Reply Brief, pp. 2-3. Nor has she conflated the agency's burden of proof at the fair hearing with the standard of review applied by the courts. To the contrary, the district court specifically noted it was HHSC's reviewing attorney who "conflate[d] [these] two different standards of review" in reaching the agency's final decision. CR 223. HHSC's claim concerning this issue has no merit.

Also without merit is HHSC's continued assertion that the agency's order "is clearly supported by substantial evidence." Appellant's Reply Brief, p. 3. The district court correctly determined that "[o]f the reasons given for denial in the denial letter, THHSC has abandoned some and Ms. Lukefahr has demonstrated that there is no substantial evidence to support those remaining." CR 223. In this Court, as in the district court, Jessica has identified the reliable and probative evidence in the administrative record demonstrating that she has a medical need to stand throughout

---

[1] TEX. GOV'T CODE § 2001.174 sets out six distinct bases for reversal of an administrative decision. The district court correctly relied upon two of the six in reversing HHSC's hearing decision.

the day, while at home and in the community, and that she cannot use a separate (static) stander to meet this need.[2] Testimony drawn from the record establishes that HHSC conceded Jessica's medical need to stand and failed to refute the professional opinion of her treating medical providers that a separate stander will not meet this medical need. *See* Appellee's Brief, pp. 16-34 and Section C. below. There is <u>no</u> reliable and probative evidence supporting the agency's decision.

Moreover, the district court correctly concluded that "in the absence of a reasoned decision" HHSC's order is arbitrary and capricious. CR 223, 226. According to the court, "[t]he twelve Findings do not provide any underlying facts to support the [agency's] conclusory statement that '[b]ased on the findings of fact and applicable authority…the exceptional circumstances were not met.'" CR 223. And, as previously noted, "[a]n agency acts arbitrarily if it makes a decision without regard for the facts, if it relies on fact findings that are not supported by any evidence, or if there does not appear to be a rational connection between the facts and the decision." *Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality,* 393 S.W.3d 417, 423 (Tex. App. 2012), review denied (Mar. 29, 2013), citing *City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819–20 (Tex. App.—Austin 2011, pet. denied). *See also City of El Paso v. Public Util. Comm'n of Tex.,* 883 S.W. 2d 179, 184 (Tex. 1994). The district court's

---

[2] The terms "separate stander" and "static stander" are used interchangeably throughout this brief.

3

determination that HHSC's decision is unsupported by substantial evidence and is arbitrary and capricious is correct and should be affirmed.

**B.** **HHSC's Interpretation of TMHP's Denial Notice does not Support Reversal of the District Court's Decision.**

HHSC acknowledges that constitutional due process requires the agency to provide "adequate notice *detailing the reasons* for a proposed termination." *Goldberg v. Kelly,* 397 U.S. 254, 267-268 (1970). (emphasis added) Appellant's Reply Brief, p. 14. The Medicaid Act's due process protections are in accord. Specifically, 42 C.F.R. § 431.210 (b-c) requires that a Medicaid denial notice contain "[t]he reasons for the intended action" and the specific regulations that support…the action."[3] Accordingly, HHSC was obliged to clearly state its reasons for denying Jessica's wheelchair request in its notice of adverse action and to prove the accuracy and adequacy of these reasons at the fair hearing. As explained by the district court, "unless the letter [denial notice] constrains, it is no more than notice to the Medicaid clients that she has lost, with an explanation to follow in the hearing." CR 222.

HHSC's claim that Jessica Lukefahr "artificially limit[ed]" the agency's reasons for denying her wheelchair request is incorrect. To be clear, TMHP's denial notice did not "enumerate" the reasons for its adverse action. It is only by examining

---

[3] HHSC's reference to this federal regulation omits the requirement that adequate notice must also include the legal basis for denial. Contrary to HHSC's contention, it is the Centers for Medicare and Medicaid Services (CMS) that require this level of detail, not Jessica Lukefahr. *See* HHSC Reply Brief, p. 8, n. 2. HHSC's own rules are in accord. *See* 1 TEX. ADMIN. CODE § 357.11(a)(1).

4

each sentence of the letter can one attempt to decipher the agency's asserted bases for denial. Through this process, four specific reasons underlying HHSC's denial of Jessica's wheelchair request were identified.[4] While HHSC now suggests there are other bases for the denial, the agency does not identify these additional reasons. Neither did HHSC's hearing officer or reviewing attorney.

HHSC's further claim that Jessica mischaracterizes the agency's denial letter is also incorrect. Notably, the agency's expanded interpretation of the term "papers," as used in TMHP's denial notice, to include medical literature, is of no consequence to the resolution of this case. This is true for two reasons. First, HHSC's rule governing exceptional circumstances appeals of DME denials does not require the submission of "evidence-based peer reviewed literature" to establish that a requested item of DME will "serve a specific medical purpose on an individual case basis." 1 TEX. ADMIN. CODE § 354.1039(a)(4)(D). Moreover, neither of HHSC's witnesses testified at the hearing that the statement "[t]he papers did not state why a static stander that you could transfer into and out of would not meet your medical needs" was based upon information contained in the medical literature.[5]

---

[4] Three of the four reasons related to TMHP's claim that Jessica has no medical need to stand and included the following: the wheelchair "was not requested for medical reasons, but rather, to help Jessica progress at work"; the papers did not show Jessica could benefit from a standing program; and the papers did not show Jessica could perform tasks "over and over again using [her] arms against gravity." The remaining reason for the denial was the agency's alternative contention that "the papers did not state why a static stander would not meet [Jessica's] medical needs." AR 59.

[5] Jessica has never denied that TMHP's notice of adverse action stated that "[t]he papers did not state why a static stander that you could transfer into and out of would not meet your medical

5

Whether an individual has the physical capacity to transfer into and out of a separate stander is a medical judgment that is made by clinical assessment or observation of the person. And as previously explained, the uncontroverted evidence provided by Jessica's treating medical professionals established that she cannot independently transfer into a separate stander and this type of stander will not meet her medical need to stand as this need arises while alone at home or in the community. Appellee's Brief, pp. 19-30.

## C. The Administrative Record Contains No Probative Evidence Supporting HHSC's Assertion that a Separate Stander will Meet Jessica Lukefahr's Medical Need to Stand.

HHSC identifies two reasons for this Court to reverse the district court's decision in this case. Taken in turn, each of these reasons finds no support in law or fact. First, HHSC claims it denied Jessica's wheelchair request, in part, because of her "failure to request a static stander." Appellant's Reply Brief, p. 8. This claim is unfounded. All requests for DME must be accompanied by a physician's attestation of medical necessity. *See, i.e.,* AR127, 128, (physician attestation for Jessica Lukefahr). Given that Jessica's physician and physical therapist maintain that a separate stander will <u>not</u> meet Jessica's medical needs, they could not request this

---

needs. AR 59. This is why her medical providers offered extensive evidence that Jessica's access to this device would be limited to when a caregiver is present in the home and would not provide her the ability to stand as the medical need arises when she is alone at home or is in the community. *See* Appellee's Brief, pp. 19-30. Nor would a separate stander enable Jessica to perform activities of daily living (ADLs) while at home and in the community.

item of DME on her behalf. Nor were they required to do so. HHSC asked them to identify alternative items of equipment that were tried or ruled out and to explain why this was so. AR 374-375. This is precisely the medical information that Jessica's treating health care professionals provided and HHSC's witnesses failed to refute. HHSC attempts to substitute its request that Jessica's medical professionals explain what alternative DME had been ruled out with a requirement that they first request this alternative item of DME.[6] However, as the district court correctly noted, no such requirement exists in agency rule and policy. CR 222, n.3.

Second, HHSC continues to claim that the administrative record contains "substantial evidence" to support it assertion that a separate stander will meet Jessica's medical need to stand. Neither decision issued by HHSC includes any finding that even remotely supports this claim. In fact, the only finding concerning Jessica's ability to use an item of DME to stand is Finding of Fact No. 6, which states "[a]ppellant [Jessica] was able to operate a Permobil C500 power wheelchair and all its integrated features, including the standing feature during her wheelchair evaluation." AR 571, 588.

Moreover, HHSC's claim that HHSC's hearing officer and reviewing attorney found the testimony of HHSC's witnesses to be credible on this point finds no basis

---

[6] Jessica's medical professionals also ruled out her use of a postural control walker as a standing device. Notably, HHSC does not claim that their "failure" to request this item of DME had any bearing on the agency's denial of Jessica's request for a wheelchair with integrated stander.

7

in the agency's decision. Neither one of them issued any finding that even remotely suggests they relied upon the testimony offered by Ms. Claeys or Ms. Cannizzaro to reach their decision in this case or found such testimony to be credible. HHSC maintains that "Ms. Lukefahr cannot so easily dismiss the testimony of [HHSC's witnesses]" but ignores the fact that HHSC's hearing officer and reviewing attorney did just that.[7] Appellant's Reply Brief, p.10.

HHSC again defends its administrative decision by reference to the Eleventh Circuit's decision in *Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011). There is no comparison between the two. The question in *Moore* was whether the state unlawfully reduced the plaintiff's private duty nursing from 94 to 84 hours/week. The evidence before the Court included the testimony of the plaintiff's treating physician and that of the state's physician. In his sworn testimony, the state's doctor identified the factors he considered in forming his opinion, including his belief that some of plaintiff's care needs could be met by a home health care provider rather than a private duty nurse. Ultimately he concluded that an 85 minute/day reduction in private duty nursing would not endanger the plaintiff's welfare and "she would continue to basically receive the same type of care that she received prior to [the

---

[7] Contrary to HHSC's claim, Jessica does not invite the Court to disregard the hearing officer's judgment as to witness credibility or weight of the evidence as the hearing officer wholly failed to exercise such judgment. As the district court explained, none of the twelve Findings issued by the hearing officer provided any underlying facts to support his conclusion that exceptional circumstances were not met. CR 223.

8

reduction.] *Id.* at 1228. The testimony offered by the state in *Moore* is a far cry from that provided by HHSC's witnesses at the fair hearing.[8]

Jessica does not deny that HHSC has a role to play concerning the medical necessity of Medicaid services. Having conceded Jessica's medical need to stand at the fair hearing, the agency's role was to provide reliable and probative evidence that a separate stander will meet Jessica's medical need to stand. HHSC's witnesses failed to provide such evidence and any claim to the contrary finds no support in the administrative record. For example, HHSC now asserts that "substantial evidence showed that Ms. Lukefahr has no medical need to stand in the community." Appellant's Reply Brief, p. 12. Once again, HHSC cites TMHP's denial notice as support for this statement, but, as explained in Appellee's Brief, p. 26, the agency's notice of adverse action is not proof of the assertions made therein. If it were, a Medicaid hearing would begin and end with admission of the denial notice into the record. As the district court correctly noted, HHSC was required to present its "proof" at the hearing and the denial notice simply constrains the proof that must be provided. CR 222.

---

[8] Jessica Lukefahr did not "invent" the standard requiring HHSC to provide reliable and probative evidence at the fair hearing. Testimony from agency representatives who did not make the decision to deny Jessica's request, who could not identify the criteria used to deny this request, and could not name a single medical purpose that could justify approval of a wheelchair with integrated standing feature in an exceptional circumstances appeal does not qualify as reliable and probative evidence. *See* Appellee's Brief, pp.10-11.

It is undeniable that Ms. Claeys conceded Jessica's medical need to stand when she testified that "a standing program is important to address the concerns that have been presented today. All of that documentation justifies standing…"[9] HR 1:26:55-:1:27:12. Neither she nor TMHP's nurse then testified that Jessica's medical need to stand only arises during the period of time she has access to a caregiver at home or even attempt to explain how this could be true. HHSC's claim that Jessica has no medical need to stand in the community is not supported by its limited references to agency testimony. For example, HR 1:49 contains the opinion of TMHP's nurse that completion of ADLs with the requested wheelchair "would not necessarily be considered a therapeutic purpose." Not only does Ms. Cannizzaro's testimony have no bearing on the question of Jessica's medical need to stand while away from home, it is also wrong. TMHP's own policies identify performance of ADLs as one of several "prior authorization requirements" for custom power wheelchairs. TMPPM §§2.2.15.12.4 and 2.2.15.12.5.[10] The documentation provided by Jessica's medical professionals establishing that the recommended wheelchair will allow her to perform ADLs is consistent with this requirement.

---

[9] This concession by Ms. Claeys disproves TMHP's statement in its denial notice that "the main reason for requesting a standing power wheelchair was to help you progress at work. The main reason was not for treatment of your medical condition." AR 59. HHSC's attempt to renew this basis for denial in its Reply Brief has no merit. Appellant's Reply Brief, p. 12.

[10] *See* http://www.tmhp.com/pages/medicaid/medicaid_publications_provider_manual.aspx

The testimony found at H.R. 2:02 also fails to support HHSC's contention that Jessica has no medical need to stand while in the community. Aside from the fact that TMHP's nurse misinterpreted the results of the research study she was describing,[11] it is undeniable that this study addressed only one of Jessica's numerous medical conditions that necessitate standing, *i.e.* the ongoing risk of pressure sores, and did not address any others, most notably the pain and respiratory compromise caused by dystonia, which can occur at any time or place. The limitation of the testimony offered by TMHP's nurse was clearly established by HHSC's attorney:

> Q (HHSC attorney): So this article is restricted simply to load distribution of weight to prevent skin ulcers.
>
> A (Cannizzaro): That is correct.
>
> Q (HHSC attorney): It does not address any of these other medical claims submitted by the petitioner.
>
> A (Cannizzaro): No, it does not.

HR 2:01:39-2:01:49

The professional opinion of Jessica's medical providers that she has a medical need to stand while in the community and while at home alone is controlling in light

---

[11] TMHP's nurse offered her interpretation of a research study investigating the use of wheelchair standing, tilt and recline to reduce pressure sores. Her testimony that this study concluded "there's not one system that's necessarily any better than another" (HR 2:00:17-2:00:32) failed to acknowledge that the researchers actually determined that "standing was the only configuration that decreased loads off of the seat and backrest simultaneously..." AR 201-202.

11

of HHSC's failure to rebut this evidence at the fair hearing. Also controlling is the unrefuted evidence offered by Jessica's medical providers that she cannot independently transfer into a separate stander. TMHP's nurse testified that use of a separate stander requires a lateral transfer into this device. HR 1:53:13-1:53:20. Neither she nor HHSC's nurse offered any testimony that Jessica can independently perform this type of transfer to be able to use a separate stander at home. Certainly, they did not refute the professional opinion of Jessica's treating medical providers that she cannot.

HHSC's contention that Jessica's medical need to stand is limited to "about one hour a day, five days per week" also has no support in the record.[12] As previously explained, TMHP's nurse testified concerning her understanding of certain research studies addressing the positive effect of standing on bone density.

> And the literature that's out there shows that it does help with preventing - - the static standers help with - - preventing loss of bone density and that the - - - - usually it's like approximately an hour a day or more, at least five times a week is the level that is considered to meet a therapeutic need.

---

[12] Contrary to HHSC's suggestion, Jessica has never claimed she is entitled to "constant caregiver assistance" to meet her medical need to stand. Appellant's Reply Brief, p. 13. Nor would constant "caregiver assistance" address Jessica's medical need to stand while out of her home as she would not have access to a separate stander in the community. Only a custom power wheelchair with integrated standing feature will address Jessica's medical need to stand as the need arises. The district court did not determine that "constant access to caregiver" was at issue either. CR 224. Appellant's Brief p. 13, n.6.

This general statement about the medical literature addressing the impact of standing on bone density does not refute the testimony of Jessica's physical therapist that:

> . . . Jessica travels in her day-to-day activities, and she doesn't know when the dystonia if going to kick in because of fatigue or because she's driven across a rough terrain in her power wheelchair. She doesn't know when it is going to kick in. And by having the integrated stander, when she feels it kick in, to start, she can immediately change into a standing posture and alleviate the dystonia or any back pain or respiratory compromise that is going on. HR 3:37.56- 3:38.50.

The administrative record contains <u>no</u> reliable and probative evidence refuting the opinion of Jessica's treating medical professionals that she has a medical need to stand, whether at home or in the community, to address the significant medical conditions she faces due to her physical disability. As such, the district court's decision is correct and should be affirmed.

**D.      HHSC Failed to Follow its Own Procedures and those Required by Federal Medicaid Policy.**

HHSC's final argument is much like the one made in the agency's initial brief. Appellant's Brief, pp 26-31; Appellant's Reply Brief, pp. 14-15. As before, HHSC asserts that Jessica received sufficient due process in this case.[13] But, as previously noted, this argument misses the mark. *See* Appellee's Brief, pp. 35-37. The district

---

[13] HHSC's alternative argument that "the clear solution is to remand this case and begin due process anew" asks that the agency be allowed to further protract its administrative process, which began for Jessica in March 2013. To the contrary, affirmance of the district court's decision is the only "clear solution" to HHSC's substantive and procedural errors in this case.

13

court correctly reversed the agency's decision because it is not supported by substantial evidence and is arbitrary and capricious. The deficiencies in the administrative review process further demonstrate that the agency's decision was legally flawed. HHSC's attorney did not review the hearing officer's decision for errors of law as required by 1 TEX. ADMIN. CODE § 357.703(b)(3). Nor did his review comport with federal Medicaid policy that requires the state to afford a fair hearing "to determine whether an adverse decision in contrary to [federal Medicaid] law…" Appellant's Brief, App. H. The hearing officer's decision was unsupported by substantial evidence and arbitrary and capricious. The reviewing attorney's mere recitation of that decision was the same. The district court correctly reversed HHSC's administrative decision in this case.

## CONCLUSION AND PRAYER

For the reasons described in Appellee's Brief and above, Plaintiff Jessica Lukefahr respectfully requests this Court to affirm the decision of the district court so that she can obtain the custom power wheelchair recommended by her treating medical providers more than two years ago.

Respectfully Submitted,

_/s/ Maureen O'Connell_____
MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
(512) 458-4800 (Phone)
(512) 458-5850 (Fax)
moconnell458@gmail.com

*Attorney for Appellee*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(B) because it contains 3,599 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

_/s/ Maureen O'Connell_____
MAUREEN O'CONNELL

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2015, a true and correct copy of the foregoing document was electronically filed, and that a true and correct copy of the foregoing document was served by electronic mail on the same date to:

Kara Holsinger
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711


    /s/ Maureen O'Connell
MAUREEN O'CONNELL